IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| In re: | |
| NANCY ANN WORSLEY, | Case: 13-71206-SCS |
| Debtor. | Chapter 13 |
| | |
| NANCY ANN WORSLEY, | |
| Plaintiff, | |
| v. | APN: 13-07042-SCS |
| JPMORGAN CHASE BANK, NA, | |
| SAMUEL WHITE, PC, TRUSTEE, | |
| Defendants. | |
| | |
| JPMORGAN CHASE BANK, NA | |
| SAMUEL WHITE, PC, TRUSTEE, | |
| Counterclaim Plaintiffs, | |
| v. | |
| NANCY ANN WORSLEY, | |
| MICHAEL P. COTTER, CHAPTER 13 TRUSTEE, | |
| ROGER D. WORSLEY | |
| GUY AMUIAL | |
| Counterclaim and Third-Party Defendants. | |

COUNTERCLAIM
AND THIRD-PARTY CLAIM

JPMorgan Chase Bank, N.A. ("Chase") and Samuel White, PC, Trustee ("Deed of Trust Trustee") (collectively referred to as the "Lender" or the "Defendants"), by counsel, and pursuant to Rules 13 and 14 of the Federal Rules of Civil Procedure, as made applicable by Rule 7013 and

Jeffrey L. Marks, Esq.  (VSB No. 40202)
Kaufman & Canoles
2101 Parks Avenue, Suite 700
Virginia Beach, VA  23451
(757) 491-4045 – T  (757) 491-4020 – F
jlmarks@kaufcan.om
*Counsel for JP Morgan Chase Bank, NA and Samuel White, PC, Trustee*

7014 of the Federal Rules of Bankruptcy Procedure, files this counterclaim and third-party claim in this Adversary Proceeding pending in the United States Bankruptcy Court for the Eastern District of Virginia, Norfolk Division ("Bankruptcy Court") against the plaintiff and debtor Nancy Ann Worsley ("Debtor"); Roger D. Worsley ("Worsley"); Guy Amuial ("Amuial"); and Michael P. Cotter, Chapter 13 Trustee ("Chapter 13 Trustee").  In support of its counterclaim and third-party claim ("Action"), the Lender states as follows:

## PRELIMINARY STATEMENT

1.     The Lender entered into a refinance loan with Amuial under the clear condition and in unequivocal consideration of it receiving a first deed of trust lien position on certain real property and improvements to secure its repayment.  Indeed, the loan made to Amuial paid off and satisfied a prior loan that had been taken out by Worsley and which was secured against the same real property and improvements.  However, due to a scrivener's error or other mistake or conduct, the Debtor is taking the incorrect position in her bankruptcy case that the underlying real property and improvements had been previously conveyed to her. If the Debtor's position is upheld by this Bankruptcy Court, then the repayment of the loan to the Lender would not be secured by the Property and thus would not be in accordance with the intentions of the parties that the Lender was to have a valid and binding first deed of trust lien on the property. Accordingly, the Lender brings this Action in response to the Complaint filed by the Debtor requesting that the Bankruptcy Court declare or otherwise use its equitable powers to adjudicate that the Lender has a valid and binding first deed of trust lien on the Property as a result of its loan which paid off another loan that was owed by Worsley.  Put another way, the relief being sought by the Lender is necessary to prevent the Debtor, Worsley, and/or Amuial from being the recipients of a tremendous windfall and inequitable result.

2

## PARTIES

2.     On April 1, 2013, the Debtor filed her chapter 13 bankruptcy petition ("Petition"), thus initiating bankruptcy case # 13-71206-SCS ("Bankruptcy Case").

3.     Michael P. Cotter is the standing chapter 13 trustee ("Chapter 13 Trustee").

4.     Worsley is a third-party defendant to this Action as a result of him having a legal and/or equitable interest in the Property (as defined below).

5.     Amuial is a third-party defendant to this Action as a result of him having a legal and/or equitable interest in the Property (as defined below).

## JURISDICTION

6.     The Lender brings this Action in this Adversary Proceeding, in part, to determine the validity, priority, or extent of a lien or other interest in property pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. It is therefore a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 157(b)(2)(K).

7.     The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND FACTS AND PROCEDURAL POSTURE

8.     By deed of gift ("2004 Deed") dated February 19, 2004 and recorded in the City of Chesapeake Circuit Court Clerk's Office ("Clerk's Office") on February 25, 2004 in Deed Book 5406 at Page 251, Grant Worsley, as the grantor, conveyed to Worsley, as the grantee, all of his interests in the real property and improvements commonly known as 1436 Oliver Avenue, Chesapeake, Virginia, 23324 ("Property"), and more particularly described as follows ("Property"):

> ALL THAT certain lot, piece or parcel of land, with the buildings and improvements thereon, situate, lying and being in the City of

>Chesapeake, Virginia, and being known, numbered and designated as Lot 32, in Block 3, as shown on that plat entitled "Plat of County Place", which said plat is duly of record in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, in Map Book 12, at page 69.
>
>It being the same property conveyed by Deed of Gift to Guy Amuial by deed from Roger D. Worsley by Deed dated December 19, 2007 and recorded January 4, 2008 in Deed Book 7325, at page 70.

A copy of the 2004 Deed is attached hereto as **Exhibit 1**.

9. On May 24, 2007, Worsley entered into a loan ("Cornerstone Loan") with Cornerstone Investment Funding, LLC ("Cornerstone") and granted a deed of trust to secure a note payable to Cornerstone in the principal amount of $130,000.00 ("Cornerstone Deed of Trust"), by conveying the Property in trust to W. David Timberlake, Trustee, for the benefit of Cornerstone. The Cornerstone Deed of Trust was recorded in the Clerk's Office on May 31, 2007 in Deed Book 7095 at Page 159. A copy of the Cornerstone Deed of Trust is attached hereto as **Exhibit 2**.

10. By deed of gift ("2007 Deed") dated and executed by Worsley on December 19, 2007 and recorded in the Clerk's Office on January 4, 2008 in Deed Book 7325 at Page 70, Worsley intended to convey all of his interests in the Property to Amuial. A copy of the 2007 Deed is attached hereto as **Exhibit 3**.

11. However, the language in the 2007 Deed inadvertently states, in pertinent part:

>THIS DEED OF GIFT made this 19th day of December 2007, by and between ROGER D. WORSLEY, Grantee [*sic*], and GUY AMUIAL, Grantor, [*sic*]…

4

12.     As there had been no alteration or addition to the chain of ownership in the Property since the 2004 Deed, the 2007 Deed obviously incorrectly identifies Worsley as the grantee.

13.     On February 26, 2008, ostensibly unaware of the scriveners error in the 2007 Deed, Amuial entered into a refinance loan ("Refinance Loan") with the Lender and granted a deed of trust to secure a note ("Note") payable to Chase in the amount of $163,600.00 ("Refinance Deed of Trust"), conveying the Property in trust to Stacey S. Temple, Trustee, for the benefit of Chase.  The Refinance Deed of Trust was recorded in the Clerk's Office on February 27, 2008 in Deed Book 739 at Page 546.  A copy of the Refinance Deed of Trust is attached hereto as **Exhibit 4**.

14.     As evidenced by the HUD-1 Settlement Statement dated February 26, 2008 ("Settlement Statement"), the proceeds from the Refinance Loan paid off the Cornerstone Loan and satisfied the Cornerstone Deed of Trust in which the payoff was $156,074.59 along with other obligations.  A copy of the Settlement Statement is attached hereto as **Exhibit 5**.

15.     In other words, the Refinance Loan taken out by Amuial and secured by the Property paid the Cornerstone Loan that had been taken out by and was for the benefit of Worsley.

16.     In the Refinance Deed of Trust, Amuial warrants and covenants that:

> [Amuial] is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  [Amuial] warrants and will defend generally the title to the Property against all claims and demands…

17.     By deed of gift ("2009 Deed") dated July 22, 2009 and recorded in the Clerk's Office on July 30, 2009 in Deed Book 789 at Page 68, Worsley, as the grantor, conveyed all of

5

his interests in the Property to the Debtor, as the grantee.  A copy of the 2009 Deed is attached hereto as **Exhibit 6**.

18.	By deed of correction ("Deed of Correction") dated September 17, 2009 and recorded in the Clerk's Office on September 18, 2009 in Deed Book 7937 at Page 192, an attempt was made to correctly convey all of Worsley's interests in the Property to Amuial with respect to the 2007 Deed.  A copy of the Deed of Correction is attached hereto as **Exhibit 7**.

19.	Interestingly, the Deed of Correction was re-acknowledged by the same Notary Public, Lori A. Silverstorf, as who notarized the 2007 Deed.

20.	The Deed of Correction was ostensibly prepared and recorded as a result of the typographical and scrivener's error in the 2007 Deed.  Indeed the language in the Deed of Correction states, in pertinent part:

> THIS DEED OF CORRECTION IS BEING RECORDED TO CORRECT A SCRIVENER'S ERROR REGARDING THE NAMING OF THE GRANTOR AND GRANTEE …

21.	The Debtor initiated this Adversary Proceeding on April 1, 2013 attempting to avoid the Refinance Deed of Trust based on the Debtor's allegations that Amuial did not have an interest in the Property at the time of the Refinance Deed of Trust and that consequently the Property is thus unencumbered.

22.	However, based on the fact that the 2007 Deed contained an obvious scrivener's error that was attempted to be remedied through the Deed of Correction, it is axiomatic that the Lender has a valid and binding security interest in the Property vis-à-vis the Refinance Deed of Trust.

23.	Clearly, through the Refinance Loan, the Lender advanced funds that benefitted both Amuial and Worsley by paying off the Cornerstone Deed of Trust.

6

24. Accordingly, the Lender files this Counterclaim and Third-Party Claim.

## SUMMARY OF RELIEF BEING SOUGHT

25. With respect to the 2007 Deed, there can be no logical conclusion or inference other than the fact that the Property was conveyed from Worsley to Amuial.

26. Indeed, it is folly to suggest that somehow Amuial was conveying an interest in the Property to Worsley in the 2007 Deed when Worsley already had an interest in the Property.

27. Both Amuial and Worsley received the benefit of the of the Refinance Loan, as the proceeds paid off the Cornerstone Loan for which Worsley was liable.

28. However, for whatever reason, there was a scrivener's error and/or mistake in the 2007 Deed resulting in the Property not being conveyed to Amuial or, alternatively, the Refinance Deed of Trust was not put in the name of Worsley.

29. In any event, it was intended by all the parties to this Action that the repayment of the Note would be secured by a first deed of trust lien on the Property.

30. Accordingly, the Lender now seeks the entry of an order by the Bankruptcy Court providing for the reformation of the 2007 Deed and/or Refinance Deed of Trust and any relevant Refinance Loan documentation to reflect the parties' intention that the Lender would have a valid and binding secured interest in the Property to secure the repayment of the Refinance Loan.

## COUNT I: DECLARATORY JUDGMENT AS TO VALIDITY OF LIEN

31. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 30 of this Action as if stated fully herein.

32. An actual and justiciable controversy exists regarding the Refinance Deed of Trust, as set forth above.

33. The Debtor, Worsley, and Amuial knew that Amuial had the sole and complete interest in the Property and the Property was to secure the repayment of the Refinance Loan.

34. However, by mutual mistake, fraud, or for other reasons unknown, and though the Debtor, in fact, listed herself as the owner of the Property in her Bankruptcy Case, the Debtor's interest in the Property should be subject to the Refinance Deed of Trust even though the Debtor did not sign the Deeds of Trust.

35. Alternatively, the Property should be declared to belong to Amuial.

36. The Refinance Deed of Trust and the reasonable inferences drawn therefrom reflect that the parties intended that the Refinance Deed of Trust would be valid, binding, and recorded liens against the entire Property and for the benefit of the Lender.

37. The execution and delivery of the Refinance Deed of Trust would be sufficient to create a lien against the Property to secure Amuial's obligations under the Refinance Loan, the repayment of which is secured by the Property.

38. A judicial determination and declaration is therefore necessary to declare that (i) the Refinance Deed of Trust conveys the Debtor's interest in the Property to secure the repayment of the Note; and/or (ii) the Deed of Trust constitutes a valid, enforceable, and binding lien against the entire Property *nunc pro tunc* to February 27, 2008.

**COUNT II: REFORMATION OF 2007 DEED AND/OR REFINANCE DEED OF TRUST**

39. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 38 of this Action as if stated fully herein.

40. Equity and the ends of justice require that the Bankruptcy Court reform the 2007 Deed as necessary effective as of the January 4, 2008 closing, *nunc pro tunc*, in order to reflect the parties' intention that the Property was to be conveyed by Worsley to Amuial.

8

41. Alternatively, equity and the ends of justice require that the Bankruptcy Court reform the Refinance Deed of Trust as necessary effective as of the February 26, 2008 closing, *nunc pro tunc*, in order to reflect the parties' intention that the repayment of the Repayment Loan would be secured by the Debtor's, Worsley's, and/or Amuial's interest in the Property.

42. The reformation will result in the Lender having a valid and binding first deed of trust lien on the Property.

43. This equitable action will rectify the mistake, fraud, or improper conduct that led to the Refinance Deed of Trust not being in congruence with the language in the 2007 Deed, and thus reflect everyone's intention that the Lender has a valid secured interest in the Property.

44. This relief, if granted, will not result in any prejudice to any party and will, in fact, result in the avoidance of a windfall to any party.

### COUNT III: EQUITABLE SUBROGATION

45. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 44 of this Action as if stated fully herein.

46. The Cornerstone Deed of Trust was a validly recorded and subsisting deed of trust lien against the Property existing at the time of the execution of the Refinance Deed of Trust.

47. The proceeds of the Refinance Loan were used in part to pay off the Cornerstone Loan and other previous loans and obligations secured by Worsley's interest in the Property.

48. The Refinance Loan funds were advanced in reliance upon the Refinance Deed of Trust securing the Refinance Loan as a valid lien on the Property.

49. The Plaintiffs are therefore entitled to (i) be equitably subrogated to the lien position and extent of the Cornerstone Deed of Trust that secured the Cornerstone Loan that was paid off with the proceeds of the Refinance Loan, and (ii) have the Refinance Deed of Trust

substituted in the place of the previous liens because no party would be prejudiced or placed in a worse position than they occupied immediately prior to the funding of the Refinance Loan.

## COUNT IV: CONSTRUCTIVE TRUST

50. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 49 of this Action as if stated fully herein.

51. To the extent that any party obtained possession of the proceeds of the Refinance Loan or the benefits thereof without their interest in the Property being subject to the lien established by the Refinance Deed of Trust, they should hold the Property in a constructive trust.

52. The facts and circumstances surrounding the execution of the 2007 Deed require the Court to impress a constructive trust on the Property, or the benefits thereof, created, arising and effective as of the date of the 2007 Deed to January 4, 2008.

53. Alternatively, the facts and circumstances surrounding the execution of the 2007 Deed and/or Refinance Deed of Trust and application of the Refinance Loan proceeds require the Court to impress a constructive trust on the Property and the Refinance Loan proceeds, or the benefits thereof, created, arising and effective as of the Closing Date on the Refinance Loan to February 26, 2008.

54. Any such constructive trust was created prior to the filing of the Debtor's Chapter 13 Petition and is superior to the rights of the Chapter 13 Trustee and any other party, and in favor of the Lender, as a matter of equity, in order to prevent a failure of justice.

## COUNT V: EQUITABLE LIEN

55. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 54 of this Action as if stated fully herein.

56. Under the circumstances, it would be improper and inequitable for the Debtor, Worsley, Amuial, and/or Chapter 13 Trustee to obtain an interest in the Property free and clear of any lien or encumbrance of the Lender against the interest in the Property.

57. By entering into the Refinance Deed of Trust, the relevant parties demonstrated their intent to encumber and secure the Property for the benefit of the Lender to repay the Refinance Loan.

58. Equity and the ends of justice require that the Court impose and establish an equitable lien securing the repayment of the Refinance Loan against the parties' interest in the Property.

## COUNT VI: IMPLIED OR RESULTING TRUST

59. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 58 of this Action as if stated fully herein.

60. The facts and circumstances surrounding the intentions of the parties in entering into the Refinance Loan and executing the 2007 Deed and Refinance Deed of Trust gave rise to an implied or resulting trust in the Debtor's, Worsley's, Amuial's, and the Chapter 13 Trustee's interest in the Property and the proceeds of the Refinance Loan and benefits thereof in favor of the Lender.

61. It is necessary, equitable, and appropriate to impose an implied or resulting trust on the Debtor's, Worsley's, Amuial's, and the Chapter 13 Trustee's interest in the Property in favor of the Lender as intended under the Refinance Loan, and order that these parties hold their respective interests, if any, in the Property as trustees of such trust for the benefit of the Lender to prevent a fraud or injustice which would otherwise ensue.

62. In the alternative, the Lender requests that the Debtor, Worsley, Amuial, and/or the Chapter 13 Trustee hold the Property as trustees of such trust for the benefit of the Lender pending execution of the reformation of the 2007 Deed and/or Refinance Deed of Trust.

63. Moreover, it is necessary, equitable, and appropriate to impose an implied or resulting trust on the Refinance Loan proceeds and benefits thereof and order that the Debtor, Worsley, Amuial, and/or the Chapter 13 Trustee to hold the Refinance Loan proceeds and benefits thereof as trustees of such trust to prevent a fraud or injustice which would otherwise ensue.

64. In the alternative, the Lender requests that these parties hold the Refinance Loan proceeds and the benefits thereof in trust as trustees for the benefit of the Lender pending execution of the 2007 Deed and/or Refinance Deed of Trust reformation.

## COUNT VII: UNJUST ENRICHMENT

65. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 64 of this Action as if stated fully herein.

66. The Refinance Loan proceeds were advanced by the Lender with the understanding and expectation that the repayment of the Refinance Loan would be secured by a valid and fully enforceable deed of trust lien on the Property.

67. The proceeds of the Refinance Loan were used in such a manner so as to benefit Amuial, for which benefit at least Amuial accepted with full knowledge thereof.

68. Moreover, upon information and belief, the conveyance in the 2007 Deed was of such a manner so as to benefit the Debtor and Worsley, for which benefit at least the Debtor and Worsley accepted with full knowledge thereof.

69. The Debtor, Worsley, and/or Amuial would be unjustly enriched if either party is allowed to retain their interest in the Property unencumbered by the Refinance Deed of Trust.

## COUNT VIII: SPECIFIC PERFORMANCE

70. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 69 of this Action as if stated fully herein.

71. The parties intended that the Lender would have a valid, enforceable, and binding security interest in the Property.

72. Therefore, equity and the ends of justice require that the Court direct the Debtor, Worsley, and Amuial to execute all such documents necessary to effectuate the legal transfer of the Property, in trust, for the benefit of the Lender to secure the repayment of the Refinance Loan, including (a) having the Debtor execute a replacement 2007 Deed; (b) having the parties execute a replacement or supplemental Refinance Deed of Trust, if necessary, conveying the Property "of record" in trust to the current Deed of Trust Trustee; and/or (c) appointing a Special Commissioner to execute a replacement Refinance Deed of Trust conveying the Property "of record" in trust.

73. Equity and the ends of justice further require that this Court enter an order authorizing the Lender to record the replacement or supplemental version of the Refinance Deed of Trust and/or any deed or relevant document and otherwise providing that the Lender has a valid and binding first deed of trust lien on the Property.

## COUNT IX: EQUITABLE REMEDY PURSUANT TO 11 U.S.C. § 105

74. The Lender realleges and incorporates the allegations contained in paragraphs 1 through 73 of this Complaint as if stated fully herein.

13

75. Under the circumstances, this Court, a court of equity, should follow the maxim that "equity regards as done that which ought to be done."

76. Based on the totality of the circumstances and documentation, it was clear that the parties intended that the Lender would have a proper and valid security interest in the Property to secure the repayment of the Refinance Loan.

77. Indeed, to not grant the Lender a valid security interest in the Property would be giving the Debtor, Worsley, and Amuial an unconscionable windfall in the form of receiving property without paying a commensurate amount of consideration.

78. Therefore, pursuant to 11 U.S.C. § 105, the Court should enter an order establishing that the Lender has a valid first-priority lien on the Property.

**WHEREFORE**, JPMorgan Chase Bank, N.A. and Samuel White, PC, Trustee, by counsel, respectfully requests that this Bankruptcy Court enter an Order:

   i. Declaring that the Lender has a valid first lien against the Property;

  ii. Reforming the 2007 Deed and/or Refinance Deed to Trust as necessary to rectify the mistake, fraud, or improper conduct in order to provide the Lender with a valid and binding first deed of trust lien on the Property;

 iii. Equitably subrogating the Lender to the lien position and extent of the lien stemming from the Cornerstone Deed of Trust against the Property securing the loan paid with the proceeds of the Refinance Loan; and substituting the Refinance Deed of Trust in the place of the prior liens that were released as the result of the payoff of the Cornerstone Loan on the Property;

  iv. Imposing a constructive trust in favor of the Lender on the parties' relative interests in the Property, if any, and/or the benefits or proceeds thereof;

   v. Imposing and subjecting the Property to an equitable lien for purposes of securing the Refinance Loan in favor of the Lender;

  vi. Imposing an implied or resulting trust in favor of the Lender on the parties' interests in the Property and any proceeds having derived therefrom;

vii. Ordering that there was unjust enrichment to the extent that either of the parties retained an unencumbered interest in the Property and/or the benefits or proceeds from the Property or Refinance Loan therefrom;

viii. Requiring the parties to enter into such documentation as necessary with regards to the 2007 Deed and/or the Refinance Deed of Trust to reflect the intention of the parties that the Lender has a valid and binding first Deed of Trust lien on the Property as a result of the Refinance Loan that paid off the Cornerstone Loan.

ix. Invoking its equitable powers under the Bankruptcy Code to fashion the necessary remedy to reform the 2007 Deed and/or Refinance Deed of Trust and any relevant Loan documentation and provide the Lender with a valid and binding first Deed of Trust lien against the Property;

x. Awarding the Lender its attorneys' fees and costs expended herein to extent allowed and as provided under the relevant loan documentation; and

xi. such further relief as the Bankruptcy Court deems appropriate.

May 7, 2013                              **JPMORGAN CHASE BANK, NA**
                                         **SAMUEL WHITE, PC, TRUSTEE**

                                         By:/s/ *Jeffrey L. Marks*
                                              Of Counsel

Jeffrey L. Marks, Esq. (VSB No. 40202)
Kaufman & Canoles
2101 Parks Avenue, Suite 700
Virginia Beach, VA  23451
(757) 491-4000 – T  (757) 491-4020 – F
jlmarks@kaufcan.com
*Counsel for JP Morgan Chase Bank, NA and Samuel White, PC, Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2013, a copy of the foregoing *Counterclaim and Third-Party Claim* was mailed by prepaid U.S. Mail and/or by electronic mail to the following:

| | |
|---|---|
| Timothy V. Anderson, Esquire | Michael P. Cotter, Esquire |
| Anderson & Associates, P.C. | Chapter 13 Trustee |
| 2492 North Landing Road, Suite 104 | 870 Greenbrier Circle, Suite 402 |
| Virginia Beach, VA 23456 | Chesapeake, VA 23320 |

and by electronic means to all creditors and parties-in-interest who are included in the Bankruptcy Court's ECF e-mail notification system.

                                                   /s/ *Jeffrey L. Marks*

12371044v4